## THE PEOPLE v. COSTELLO.

DEFENDANT killed deceased while he was in the act of injuring a mining claim. On the trial, defendant offered to show that he was the owner, and in the lawful possession of said claim at the time of the killing. The Court refused testimony to this point. *Held*, that defendant had a right to prove his ownership of the claim, for the purpose of showing his mental condition, the motives which prompted his action, and determining the character of the offense; that the ownership was part of the *res gestæ*, and should have been admitted, subject to instructions of the Court as to its legal effect, though when admitted it may not have amounted to a justification.

APPEAL from the Fifth District.

Appellant was indicted and convicted of murder in the first degree, for killing A. S. Carver.

It appeared that Costello was working a mining claim near Gold Hill; that three men by the name of Murphy, Blanchfield, and Carver—a brother of the deceased—owned an adjoining claim; that Costello worked his claim by means of a ditch used to take water from the main mining ditch of the locality; that Murphy and associates objected to the operations of Costello, alleging that he was running tailings down on them, which damaged them. The day previous to the killing, Blanchfield and some others, Murphy not being in company, went upon the ground to cut and fill up the tail-race and ditch of Costello. He forbade the proceeding, and, after some controversy, it was abandoned for that day. The next day, Douglass, a hired man of Murphy and associates, went to the cabin of Costello, close by the scene of action, and informed him that Murphy and party were going that morning to fill up his ditch, but hoped that he would not think hard of him, Douglass, as he was only a hired man.

Costello had a loaded gun in his cabin, and told a man in his employment to bring the gun, and place it at a point named, near the ditch, as Murphy and party were no doubt armed, and would probably attempt to jump on him. Costello then proceeded to his ditch, when he found Murphy and party engaged in filling it up and destroying it. He forbade their operations. Considerable conversation occurred. Costello offered to leave it to a miners' meeting, or arbitrators, which Murphy and associates refused, telling him he could go to law. Costello offered to cut a ditch, so as to prevent injury, which was declined, Blanchfield saying it would not do. He then offered to clean up his tail-race, into

People *v.* Costello.

which they were then shoveling dirt, and if it did not pay much, he would quit, and go away—but if it did pay, he would so work as not to cause Murphy and party any injury. This was declined, Murphy telling him he had had time enough to clean it up, and daring him to put a pick in the ground. In the meantime, the deceased, Carver, was shoveling dirt to Murphy, who was engaged in treading it into the ditch. All the while the work was thus going on, Murphy had an overcoat folded up lying close by him, which he moved about with him as he changed his position, which contained a pistol, which one of the witnesses saw, Murphy so handling the coat as to indicate that it contained arms.

After his propositions of compromise had been declined, and the parties were proceeding to fill up his ditch, Costello left the ground, but immediately, or in the course of two or three minutes—the witnesses on both sides testify—returned with his gun, and called out, "Leave my claim, you have damaged me enough," at the same time, or very soon after, leveling his gun upon Murphy. The weight of evidence is, that Murphy, Blanchfield, and Douglass ran, but that Carver, the deceased, advanced towards the coat, at which Costello called out, repeatedly, "Don't touch that coat," and brought his gun round on Carver, and as he approached the coat, which was a few feet off, and got his hand on the pistol, or coat, fired and shot Carver in the back of the head, when he fell, exclaiming that he was shot. There is some conflict in the testimony as to the position of Carver when he was shot.

During the trial, defendant offered John Boyle as a witness to prove that the prisoner was the owner, and in the lawful possession of a certain mining claim, together with the flumes and tail-race connected therewith, and that, at the time of the killing, the deceased, together with three other persons, was engaged in forcibly cutting said tail-race, and otherwise destroying his, defendant's, said property. Plaintiff objected, and the Court refused to allow the testimony. Defendant excepted, and appeals.

*V. E. Howard,* for Appellant.

1. The Court below erred in refusing to allow defendant to prove his ownership and possession of the mining claim at the time of the killing, because he had a right to defend his property from a felonious attack made " by violence or surprise."

Our statute defines justifiable homicide to be, " the killing of a human

being in necessary self-defense, or in defense of habitation, property, or person against one who manifestly intends, or endeavors by violence or surprise, to commit a felony." At common law, a man was justified in taking life in defense of his habitation, but he would not have been justified in taking the life of one whom he saw engaged in an attack on the habitation of his neighbor. In all cases of this sort, it was, therefore competent to prove that it was the habitation of the defendant which was thus defended.

Our statute destroys the distinction in these cases, between killing the assailant engaged by violence or surprise in an endeavor to commit a felony on habitation and other property. In this particular, we have changed the common law. In either aspect of the case, the ownership, and certainly the lawful possession of the property, becomes a material question in determining whether there is any crime, and if any, what is the grade of it. It is difficult to see on what principle proof of ownership and possession was refused. (*The People* v. *Payne*, 8 Cal. 341.) If the defendant had a well founded belief that a felony was about to be committed, either on his person or property, it would extenuate the killing. (*The State* v. *Rutherford*, 1 Hawks, 457.)

The refusal of the Judge went still further. The offer was, to show that the deceased entered with force upon the mining claim of the prisoner. Our statute authorizes the owner of property to defend it by repelling force by force. It declares that, " resistance sufficient to prevent the offense may be made by the party about to be injured, * * * to prevent an illegal attempt, by force, to take or injure property in his lawful possession." (Wood, 271, art. 1390; Id. 331, art. 1890.)

Here the lawful possession of the party about to be injured, and the force of the assailant, are clearly competent evidence; and yet the Judge refused to allow the evidence of both facts to go to the jury; and the whole evidence, in consequence, leaves the question of ownership and lawful possession in more or less doubt. Besides, the refusal tended to induce the jury to believe that the prisoner had no right to repel force by force, or to resist a felonious attempt to destroy his ditch and property, made with force. Even at common law, when the defense of property by force was not allowed, as to trespass, and therefore title could not be gone into, it was held competent to prove title, for the purpose of showing the condition of the prisoner's mind, and reducing the killing to manslaughter. (*State* v. *Zellers*, 2 Halstead, 230.)

Our statute punishes the cutting or injuring a mining ditch willfully

or feloniously, by fine, and imprisonment in the penitentiary.   It is, therefore, felony, according to the definition of our law.   (Wood, 351, art. 2001 ; Id. 270.)

The prisoner should have been allowed to prove, affirmatively, that it was his ditch, in his lawful possession, as laying a foundation for proving his right to defend it from forcible injury, and especially from an attempt by force to prevent its being feloniously cut and injured.

*Thomas H. Williams, Attorney General, and H. P. Barber, District Attorney*, for Respondent.

1. The proffered testimony of Boyle, as to the ownership and possession of the claim, was properly excluded, because all the proof shows that in the morning, and at the time of the homicide, deceased and his party were in actual possession, and it was immaterial which party had the constructive possession.   Forcible entries on a party in possession are not permitted.

Again : if the offer of this evidence was made under sec. 29 of the Act concerning Crimes, (C. L. 641) authorizing homicide where a party endeavors, by violence or surprise, to commit a felony against the property of defendant, it falls short of the object, for—1st. The offer was, to prove a trespass, not a felony ; to have amounted to felony, the trespass must have been willful and malicious—not done in a dispute about mining rights, but for the sake of wanton mischief (C. L. 667, sec. 140).   2. There was no offer to show that the killing was necessary for the defense of the property, or that it was done in defense at all. The offer fell short of establishing any justification.

Cope, J. delivered the opinion of the Court—Baldwin, J. concurring.

The defendant was convicted of murder in the first degree.   Every circumstance connected with the commission of the offense, and tending to give character to the act, was a proper subject of consideration by the jury.   The ownership of the property, the injury to which was the immediate cause of the difficulty, was important for the purpose of showing the mental condition of the defendant, and the motives which prompted his action.   The homicide was committed while the deceased was in the act of injuring the property, and upon what ground the Court refused to permit the defendant to go into the question of ownership, we are at a loss to determine.   We think no authority can be found to sus-

tain the action of the Court in this respect.   The admissibility of the evidence, and its effect when admitted, are very different questions.   It may not have amounted to a justification, but it was nevertheless admissible for the purpose of showing the condition of the prisoner's mind, and determining the character of the offense.   It was a part of the *res gestæ*, and should have been submitted to the jury, subject, of course, to the instructions of the Court as to its legal effect.

Judgment reversed, and the cause remanded for a new trial.